The final case on calendar for argument is United States v. Kalilikane Did opposing counsel arrive? Good morning, Your Honor. I know that opposing counsel is trying to get in touch with the court. It's my understanding that there was a calendaring error. And I'm here for the United States, and I'm prepared to proceed, but opposing counsel, from what I understand, is not prepared to proceed this morning. I think that what we'll do is we'll hear from you. Thank you, Your Honor. Good morning. Again, I'm Erin White from the District of Alaska, the United States Attorney's Office. I'm curious about the calendaring error. Does it mean his office made it or the court made it? No, Your Honor. Your Honor, I hesitate to speak for defense counsel on the record. No, you shouldn't. You shouldn't. It's not my understanding that it was the court's error in this case. Your Honor, the whole reason that we are here, this appeal has been masterminded and engineered by somebody who is not here, and that is the defendant, Bernard Miguel Kalilikane. In this case, Your Honor, if the government ever had a slam-dunk bank robbery, we had it here. We had eyewitnesses. We had four tellers testify at trial, two from each bank, that Bernard Miguel Kalilikane was the one who stepped into that bank, shoved a gun in their face, and robbed them. Well, that doesn't seem to be an issue in the cases. I mean, what he's saying, there was an error in refusing to substitute the third attorney. Your Honor, that is a manipulation on the part of the defendant, because in the face of all of this strong evidence, he knew that that was his only chance, was to pull out all the stops. Well, I guess the district court determined the second lawyer had not been, or that there was not an irreconcilable difference between him and his lawyer or whatever. Isn't that what the district court determined? Your Honor, the district court determined with respect to the second lawyer that there was not a legitimate complaint about that attorney, but the district court also found we were prepared to go to trial on April 16th of 2008. At that time, the district court found that the defendant had rather skillfully sabotaged his counsel's ability to represent him. As he had done with his first counsel, Mr. Kalilikane refused to meet with his attorneys. His first counsel went to the jail numerous times to try to talk to him, and Mr. Kalilikane simply refused to meet with him. He then told that attorney to withdraw from the case, and the same behavior went on with his second counsel. That counsel attempted to go to the jail to visit Mr. Kalilikane, and Mr. Kalilikane told him that he would not see him. The judge, on the morning of April 16th, made a finding that the defendant had deliberately manufactured a breakdown in the communication, and it was the defendant who had caused a situation where that second counsel was not able to represent him, and the judge communicated to him, essentially, I am going to give you a break today. You are going to get another attorney because you have created this breakdown in the communication. And he said, Mr. Kalilikane, you're going to get a third attorney, and you're not going to get another one. And the court proceeded with this third attorney, and they gave the defendant even more breaks, because the first hearing that we had with the third appointed counsel, it was apparent that the defendant was going to complain about him, too, and he raised baseless complaints. He said, oh, well, this court doesn't have jurisdiction because that American flag has gold fringe on it. The defendant then said that there was a conflict of interest because his counsel was appointed by the government and was therefore an agent of the government, and we were just all there as part of a grand conspiracy. The defendant had wanted his attorney to file frivolous motions, and the defense counsel said, I can't file those motions. If I file them, I am going to be sanctioned. The court, in an effort to give this defendant what he wanted, bent over backwards and allowed the defendant himself to file these motions. Were you trial counsel in this case? Yes, Your Honor. So you were there through all of the various hearings? Yes, Your Honor. I was there through every hearing, and the defendant filed frivolous motions, and the government responded to them, and the court ruled that they were frivolous. Okay, now, let's see. It was also the question of whether he unequivocally waived his right to counsel. He said, I want to represent myself, but he also indicated he wanted a lawyer. Isn't that the case? Your Honor, the defendant never made a clear and unequivocal request to represent himself. Well, I suppose that's the end of the statement, but the point is he did not unequivocally state, I want to represent myself, I don't want a lawyer. He said, I want to represent myself, but I want a lawyer. Your Honor, to be frank, and I don't have a verbatim memory of the transcript, I don't ever remember this defendant saying, I want to represent myself. As the court is well aware, this Ninth Circuit Court has recently decided, the United States v. Mendez-Sanchez, and that holds that while a defendant may invoke his or her self-representation rights after a denial of a motion to substitute counsel, the invocation must be unequivocal, and in that case, or in our case, that is not what we have. Okay, let's move you along here a little bit. On the morning of trial, the court... Yeah, yeah, I understand, okay. Now, you were going to tell us, too, there's no error in precluding the defendant from further testimony and requiring him to make a proffer as to what he would testify to after he started to rant and rave about the district attorney and, I guess, his own lawyer, and then the court said, well, and had him removed from the courtroom. Now, you're going to tell us there was no error in that. Your Honor, this is, again, another case where the court bent over backwards for the defendant. We had a record of a man who would make inappropriate outbursts in court, who was going to be disruptive. What about him appearing in shackles and in prison or jail clothing? Your Honor, with respect to the jail garb, it was his choice. It was his choice. The shackling, did he bring that, the jury's attention to that himself? He was the first one who brought that issue to the court's attention. Now, having argued all of that, what else do you want to argue in your case? Well, I would argue, with respect to the shackling, that we do not have a finding. I think you just argued that. It's harmless error. Okay. Is there anything else you want to tell us in closing, counsel? Your Honor, what I would say in closing is, again, we had, as detailed in the record, as detailed in the brief, a very strong case against this defendant. He had an attorney who, despite the fact that he refused to communicate with this attorney, did the best possible job that he could to represent him. He effectively cross-examined the witnesses, and that attorney gave an outstanding closing argument in which he brought up the only piece of evidence that the United States did not have, and that was DNA evidence. This attorney made a good-faith effort to represent Mr. Khalilakhani, and it was Mr. Khalilakhani, through his actions and his refusal to work with his attorney, who attempted to create issues on appeal, but he was not ultimately successful. All right. Thank you, counsel. We will consider the argument in opposing counsel's brief in deciding this case. The case just argued and submitted for a decision by the court, and this court is in recess until 9 o'clock a.m. tomorrow morning. All rise. This court for this session stands adjourned. Hey, Ken. Oh, hi. How are you doing? Good to see you, Jeff. Are you guys on the phone right now? Yeah, they're on the phone. No, I'm not on the phone. All right. All right. Okay. Nice to meet you guys. Hi, Craig. Hey, Craig. Ken, how are you? Good. How are you doing? Good to see you. Hey, are you – I didn't get your email address, the – we're having our summer lunch. All right. I went to Cal. Yeah, I know. Like I said, my son – my son goes to Washington. My wife graduated from Washington. I remember. I ran into you. Costco. Yeah, yeah, yeah. I'll send that to you. I'm a technic union wife. It's up at Martin Boozer in the channel. Oh, okay. They're big like – August 22nd. Are you a muncher? No, I've been a volunteer dog handler. They tell me you're in the North. But I'm the chef because he works in the Association. I always kind of – he kind of has to be the center. He's a pregnancy center. I'm the center daughter of the U.S.B. 1. What's up? I always invite people up. This year, he happened to be at Martin Boozer. Because he had a son. And I remember he was – Oh, is he really? Yeah, yeah. Let me answer one question. Hi. Hi, I'm working Wednesday. I'm sorry? I'm Holly. I'm trying to look at you. Oh, yeah. How was your trip? I didn't have lunch. No, I'm after. After breakfast. Oh, okay. I thought it was very, very interesting. I'd like to – I think I may want to do a blowout. Okay. How about this? I have a default. I mean, I'll bring everything. But I just wanted to check with you so there's no hypothetical there on the other side. Okay, you can bring it in. I can let the judges know. Okay. And I'll also have one hand up to it as well. That's great. That's probably better. Would that be better than the pull-up? Oh, okay. I had thought of that. Yeah, because it just kind of comes with, you know, to be there. I guess it depends on what bunch you go to. Some say pull-ups are better. Some say hand-ups are better. Yeah, I mean, I've been doing this for a little while, and I think the hand-ups are better because you spend all your time, you know, referring to it, and you can take a look at the hand-ups. Okay. I agree with that. Sure. Okay. And also, there's a video. Okay. It's just, it's like quarantine. That is the mother? They're filming the whole day. Oh, okay. It's just a Monday. Oh, okay. So, you know, she's definitely not going to show up. Sure. I understand. She said there's going to be a lot going on in the courtroom. Do you want the judges to really focus on this? You know, if there's a case I want to cite that I'm not going to do. That's all for later on. I'm just saying, tell me if you do. Are you, can you get it to me tomorrow? Yeah, well, yeah. I told you, I'm going to read it again tonight and see. Okay. Because if you can get it to me tomorrow, this is for the day of the argument. But if you can get it to me today, and, you know, extra copies. Sure. But the format is just, that note or is the letter you need some additional authority? The letter box. You know, because this is really at the last minute. Sure, I understand. The decision came down, but I'm thinking about including it. Oh, okay. Well, I will put it together, too. Okay. So if I get it to you tomorrow, I'm still going to, I'm going to review it. Right. I mean, you can also do it on the day of, on your day. But, you know. Better to have to read it and say, you know. Yeah, and if I don't get it tomorrow, still bring extra copies for me. Because, you know, we're new here. At least four. Okay. Okay, so try to get it to me tomorrow. I may not get it. And at least on the day that you come, some more copies. Okay, thank you very much. Okay.
judges: Farris, Thompson, Rawlinson